IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DOMINGO COLON MONTANEZ, )
                    Plaintiff, )
                              )
    vs. )    Civil Action No. 09-1547
                              )
PA HEALTH CARE SERVICE STAFFS; )
CHIEF COUNSEL STAFF; POLICY )
MAKER STAFFS; JEFFREY A. BEARD; )
ROBERT TRETINIK; MICHAEL HERBIK;)
CHRISTOPHER MEYER; DARLA )
COWDEN; PAUL DONEGAN; )
ELLSWORTH; BONNIE RITTENHOUSE; )
MAIL ROOM PROPERTY ROOM )
STAFFS; MAIL ROOM STAFFS; )
ACCOUNTANT STAFFS; BUSINESS )
MANAGER; PROGRAM REVIEW )
COMMITTEE STAFFS (PRC), )
                    Defendants. )

## MEMORANDUM OPINION

**Conti, District Judge**

       Plaintiff Domingo Colon Montanez ("Plaintiff"), an inmate in the custody of the

Pennsylvania Department of Corrections ("DOC"), is currently incarcerated at the State

Correctional Institution at Dallas ("SCI Dallas"). Plaintiff filed this civil rights action under 42

U.S.C. § 1983 ("§ 1983") against Jeffrey A. Beard ("Beard"), R.N. Ellsworth ("Ellsworth"), and

Robert Tretinik ("Tretinik") (collectively, the "DOC Defendants"), as well as Dr. Michael

Herbik ("Herbik"), Dr. Paul Donegan ("Donegan"), P.A. Christopher Meyer ("Meyer"), P.A.

Darla Cowden ("Cowden"), and Bonnie Rittenhouse ("Rittenhouse") (collectively, the "Medical

Defendants"), alleging that the DOC Defendants and the Medical Defendants violated his rights

under the Eighth Amendment to the United States Constitution relative to the medical treatment

he was receiving for Hepatitis C and end-stage liver disease while he was housed at the State Correctional Institution at Fayette ("SCI Fayette").[1]

The DOC Defendants and the Medical Defendants filed motions for summary judgment which are presently before the Court.  (ECF Nos. 132, 137.)  For the reasons that follow, both motions will be granted.

## I.    PROCEDURAL BACKGROUND[2]

Plaintiff filed the complaint in this case on April 9, 2010, asserting a myriad of claims against the DOC Defendants and the Medical Defendants, as well as other unnamed defendants. (ECF No. 10.)  The unidentified defendants were dismissed from the case and the only claims remaining against the DOC Defendants and the Medical Defendants are those brought under § 1983 asserting violations of the Eighth Amendment to the Constitution relative to the medical treatment he is receiving for liver disease and Hepatitis C.

With respect to those claims, Plaintiff alleges in the complaint that the medical treatment he received at SCI Fayette for his end-stage liver disease or cancer and Hepatitis C was inadequate because, while he has been informed that "[he] is dying slowly from [his] diseases," he has not received "medical treatment or medications."   (ECF No. 10 ¶¶ 5-10.)  In particular, Plaintiff complains that he has not been referred to an "outside hospital to be treated, hospitalized, or receive a liver transplant."  (Id. at ¶ 5.)  Plaintiff alleges that defendants Meyer, Cowden, Donegan and Ellsworth have expressed the opinion that he "need[s] a liver transplant,"

---

[1] Although Plaintiff also brought § 1983 claims under the First, Fourth, Fifth, Seventh and Fourteenth Amendments to the Constitution as well as claims pursuant to 42 U.S.C. §§ 1985 & 1986 and 18 U.S.C. §§ 241 & 242, those claims were dismissed from the case on February 23, 2012, pursuant to Motions to Dismiss filed on behalf of the DOC Defendants and the Medical Defendants.  (See ECF Nos. 58, 64, 123, 128.)  Certain unnamed defendants were terminated from the case on November 14, 2011, because of Plaintiff's failure to identify them as ordered by the court.  (See ECF No. 118.)

[2] The factual background for Plaintiff's claims will be addressed in the relevant  discussion for each motion for summary judgment.

but each failed to make the necessary arrangements or referrals. In addition, defendants Tretinik, Herbik and Meyer allegedly told him that "nothing can be done." (Id. at ¶¶ 5, 6, 7.)

Plaintiff alleges that he is in pain and that defendants Herbik and Meyer denied him pain medication. (Id. at ¶¶ 6, 7.) Plaintiff avers, however, that he received pain medication from defendant Cowden to treat his "headaches, migraines, heart pain, dizziness, low blood pressure, and weakness, breathing problems." (Id. at ¶ 8.) With respect to defendant Rittenhouse, Plaintiff claims that she drew blood from him as ordered by Herbik, but the test result "is no where to be found," and that the loss of the test impeded his ability to receive medical treatment and medication. (Id. at ¶ 11.)

Plaintiff alleges defendant Beard, in his capacity as DOC Acting Commissioner, approved unidentified policies that were followed by DOC employees and resulted in the violations of his Constitutional rights. (Id. at ¶ 4.)

The DOC Defendants filed a motion for summary judgment on July 16, 2012, and the Medical Defendants filed a motion for summary judgment on August 3, 2012. (ECF Nos. 132, 137.) After much delay, Plaintiff failed to file a formal response to the motions.[3] Both motions are ripe for review.

---

[3] On July 17, 2012, Plaintiff was ordered to file a response to the DOC's motion for summary judgment by August 16, 2012, and on August 30, 2012, Plaintiff was ordered to file a response to the Medical Defendants' motion for summary judgment by September 3, 2012. (ECF Nos. 135, 141.) On August 30, 2012, Plaintiff filed a motion to extend time to respond to the motions for summary judgment until the undersigned was able to conduct an investigation into the untimely filing of an appeal that Plaintiff submitted from an order entered by a magistrate judge denying Plaintiff's request for the appointment of counsel. (ECF No. 143.) The magistrate judge granted Plaintiff's motion giving him until September 28, 2012, to submit responses to the motions for summary judgment and indicating that no further extensions would be granted. (ECF 8/31/2012 Text Order.) Plaintiff, however, did not respond to the motions by September 28, 2012, but, on October 3, 2012, filed a renewed motion for the appointment of counsel (ECF No. 145), an appeal of the magistrate judge's most recent denial of Plaintiff's request for the appointment of counsel (ECF No. 146), and a motion to stay asking that all proceedings be stayed until the undersigned finished her investigation and his renewed motion for the appointment of counsel had been ruled on. (ECF No. 147.) Plaintiff's renewed motion for the appointment of counsel was denied on October 9, 2012 (ECF No. 148); the magistrate judge's previous denial of Plaintiff' request for counsel to be appointed was affirmed on

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides, in relevant part:

> **(a) Motion for Summary Judgment or Partial Summary Judgment.**  A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  The court should state on the record the reasons for granting or denying the motion.
>
> . . .
>
> **(c) Procedures.**
>
> **(1) *Supporting Factual Positions*.**  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

October 17, 2012 (ECF No. 149); and on January 23, 2013, Plaintiff's motion to stay was denied (ECF No. 153).  At that time, Plaintiff was again ordered to file responses to the motions for summary judgment and to do so by February 25, 2013.  (Id.) Rather than respond to the motions for summary judgment, Plaintiff on February 11, 2013, filed a motion for reconsideration of this court's order affirming the magistrate judge's denial of Plaintiff's request for counsel and the order denying his request for a stay.  (ECF No. 154.)  The court did not grant that motion for reconsideration and Plaintiff failed to respond to the motions for summary judgment.  In the motion for reconsideration, however, Plaintiff addressed, at least to some extent, the issues raised in the motions for summary judgment.  (Id.)  Accordingly, the court will consider argument made in Plaintiff's motion for reconsideration in resolving the motions for summary judgment.  The court cannot grant summary judgment in favor of defendants solely because plaintiff failed to object to their motions with respect to those claims. Defendants are entitled to judgment as a matter of law only if the evidence of record supports such a finding. Anchorage Assocs. V. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. 1990) ("Even though Rule 56(e) requires a non-moving party to 'set forth specific facts showing that there is a genuine issue for trial', it is 'well-settled ... that this does not mean that a moving party is automatically entitled to summary judgment if the opposing party does not respond.'").

To the extent Plaintiff's motion seeks reconsideration of this court's previous order affirming the magistrate judge's denial of his request for the appointment of counsel, as noted it has not been granted and will be the subject of a separate order.  The motions for summary judgment have been pending respectively since July and August 2012. Repeated delays were sought by Plaintiff requesting the appointment of counsel.  For the reasons set forth in the court's prior orders, those requests were denied and his motion to stay was denied.  Discovery was concluded in this case.  Plaintiff had months to prepare a response and further delays are not warranted.  In the event Plaintiff has any evidence that he wishes to make part of the record before this court, he will need to file a motion for reconsideration and seek to reopen the case.

**(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(a), (c)(1)(A)-(B).

> Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

Marten v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)).

An issue of material fact is in genuine dispute if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Doe v. Abington Friends Sch., 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") (citing Liberty Lobby, 477 U.S. at 248; Celotex Corp., 477 U.S. at 322-23).

> "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)).

In deciding a summary judgment motion, a court must view the facts in the light most favorable to the nonmoving party and must draw all reasonable inferences, and resolve all doubts

5

in favor of the nonmoving party. <u>Doe v. Cnty. of Centre, Pa.</u>, 242 F.3d 437, 446 (3d Cir. 2001); <u>Woodside v. Sch. Dist. of Phila. Bd. of Educ.</u>, 248 F.3d 129, 130 (3d Cir. 2001); <u>Heller v. Shaw Indus., Inc.</u>, 167 F.3d 146, 151 (3d Cir. 1999). A court must not engage in credibility determinations at the summary judgment stage. <u>Simpson v. Kay Jewelers, Div. of Sterling, Inc.</u>, 142 F.3d 639, 643 n.3 (3d Cir. 1998).

## III. DISCUSSION

Plaintiff brings this action pursuant to § 1983, which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws. It does not, by its own terms, create substantive rights." <u>Kaucher v. Cnty. of Bucks</u>, 455 F.3d 418, 423 (3d Cir. 2006) (citing <u>Baker v. McCollan</u>, 443 U.S. 137, 145 n.3 (1979) (footnote omitted)). Thus, in order to state a claim for relief under § 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States." <u>Id.</u> at 423.

### A. Motion for Summary Judgment filed by the Medical Defendants

#### 1. Failure to Exhaust Administrative Remedies with respect to claims against Rittenhouse and Donegan

The Medical Defendants initially argue that the claims brought for violations of the Eighth Amendment against defendants Rittenhouse and Donegan are subject to summary judgment because the record shows that Plaintiff failed to exhaust his administrative remedies.

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997(e)(a),[4] requires a prisoner filing a § 1983 action to exhaust all administrative remedies before filing a claim in federal court. See Spruill v. Gillis, 372 F.3d 218, 228 (3d Cir. 2004). In order to exhaust properly his or her administrative remedies, a plaintiff must be in "compliance with an agency's deadlines and other critical procedural rules . . . ." Woodford v. Ngo, 548 U.S. 81, 90–91 (2006).

The DOC's Grievance System Policy, DC–ADM 804 (the "Policy"), sets out a three-step grievance and appeals process that must be pursued through all three levels in accordance with the relevant procedural requirements before exhaustion will be found. Id. Under the Policy, an inmate is first required to set forth legibly all facts and identify all persons relevant to his claim in a grievance which will then be subject to "initial review." Spruill, 372 F.3d at 232, 233. After the initial review by a grievance officer, the inmate has the opportunity to appeal to the facility administrator for a second level of review. Id. at 232. Finally, an appeal to the Office of Inmate Grievances and Appeals is available. Id.

The Medical Defendants in this case represented, and Plaintiff does not dispute, that defendant Rittenhouse is only identified in one grievance -- No. 194967 -- and that after the grievance was denied and dismissed at the second level of review, Plaintiff failed to take a final appeal. (ECF No. 140-23.) It is also undisputed that defendant Donegan was named in only three of Plaintiff's grievances, one of which -- No. 194426 -- related to Plaintiff's vision

---

[4] Specifically, the PLRA states that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.1997e(a).

problems and is irrelevant to Plaintiff's claims brought against Donegan in this lawsuit. (ECF No. 140-25.) With respect to the other two grievances in which Donegan is named, No. 193186 was dismissed because Plaintiff failed to follow proper procedures, and No. 194967 was dismissed at the second level of review after which Plaintiff failed to appeal to final review. (ECF Nos. 140-22, 140-23.) Plaintiff therefore failed to exhaust his administrative remedies with respect to his claims brought against defendants Rittenhouse and Donegan and they are entitled to have judgment entered in their favor.

### 2. Eighth Amendment Violations asserted against Herbik, Meyer and Cowden

Remaining are Plaintiff's § 1983 claims based upon Eighth Amendment violations asserted against defendants Herbik, Meyer and Cowden relative to Plaintiff's treatment for liver disease or cancer and Hepatitis C.

The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those whom are incarcerated. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). In order to establish an Eighth Amendment violation for failing to provide basic medical treatment, a plaintiff must demonstrate: (1) a serious medical need; and (2) that the defendants were deliberately indifferent to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999), see Spruill, 372 F.3d at 235.

A medical need is serious "if it is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" Johnson v. Stempler, 373 F. App'x 151, 153 n.1 (3d Cir. 2010) (quoting Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)). Considerable latitude is given to prison medical authorities in the diagnosis and

treatment of patients, and courts "'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment.'" Inmates of Allegheny Cnty. Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir.1977)).

In order to establish deliberate indifference, a "plaintiff must make an '*objective*' showing that the deprivation was 'sufficiently serious,' or that the result of defendant's denial was sufficiently serious. Additionally, the plaintiff must make a '*subjective*' showing that the defendant acted with a 'sufficiently culpable state of mind.'" Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Deliberate indifference has been found when a prison official knows about a prisoner's need for medical treatment, but intentionally refuses to provide it, delays necessary medical treatment for a non-medical reason, or prevents a prisoner from receiving needed medical treatment. Rouse, 182 F.3d at 197.

It follows that inconsistencies or differences in medical diagnoses, short delays unaccompanied by arbitrary or unduly burdensome bureaucratic procedures, and the refusal to summon the medical specialist of the inmate's choice, perform tests or procedures that the inmate desires, or to explain to the inmate the reason for medical action or inaction do not amount to cruel and unusual punishment. Maqbool v. University Hosp. of Medicine & Dentistry of New Jersey, Civil Action No. 11-4592, 2012 WL 2374689, at * 9 (D.N.J. June 13, 2012). Allegations of negligence or medical malpractice do not amount to cruel and unusual punishment. See Spruill, 372 F.3d at 235 (neither claims of medical malpractice nor disagreements regarding the proper medical treatment are actionable); Rouse, 182 F.3d at 197 (quoting Estelle, 429 U.S. at

105) (allegations of negligence and medical malpractice are not sufficient to establish a Constitutional violation as the "inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' . . .")). As such, allegations that the inmate was provided with medical care, but the care was "inadequate," are insufficient to state a plausible claim. See Taylor v. Visinsky, 422 F. App'x 76, 78 (3d Cir. 2011).

In the instant case, Plaintiff asserts that each of the Medical Defendants failed to provide him necessary medical treatment for liver disease or cancer and Hepatitis C. The Medical Defendants, however, pointed to evidence to the contrary noting that Plaintiff's medical records contain sixty-six progress notes and over one hundred physician orders between August 2006 and February 2012. (See ECF Nos. 140-2; 140-3.)

Particular to Plaintiff's confinement at SCI Fayette, these records show that Plaintiff was seen by defendant Cowden on August 8, 2006. Cowden noted that Plaintiff was very anxious about his Hepatitis C, having misinterpreted test results and explanations of those results contained in his medical records. (ECF No. 140-2, at 87.) Cowden reviewed Plaintiff's records with him and explained that his liver function tests were normal and that he did not have a tumor. (Id.) She also explained that Plaintiff's EKGs were all normal and that he did not qualify for Hepatitis C treatment because he had received care earlier and there was no change in his condition that would warrant further treatment. (Id.) Cowden noted that no blood work had been done in 2005 because Plaintiff refused to have a physical; consequently, his blood work and an eye exam were cancelled. (Id. at 88.) Cowden recommended a muscle rub and warm moist heat for Plaintiff's complaints of pain and reported that Plaintiff was satisfied with the outcome

of their meeting which lasted for almost an hour.  (Id.)  Lastly, Cowden noted that there was no indication for any further testing at that time.  (Id.)

On June 18, 2007, Cowden saw Plaintiff during sick call at which time Plaintiff complained of dry eyes and blurry vision.  (Id. at 86.)  Cowden examined Plaintiff's eyes and found nothing remarkable.  In response to Plaintiff's inquiry about treatment for his Hepatitis C, Cowden reassured Plaintiff that he was due to be seen at the clinic and that any treatment plan for his Hepatitis C would be discussed at that time. She ordered Naprosyn for Plaintiff, which was approved by Herbik.  (Id.; ECF No. 140-3, at 45.)

Plaintiff, in fact, was seen by Donegan in the Hepatitis C clinic on June 20, 2007 -- two days later.  Donegan ordered a follow-up exam in the clinic in one year.  (ECF Nos. 140-2, at 83; 140-3, at 45.)

Plaintiff's medical records show that on June 22, 2007, Plaintiff refused to be tested to determine his viral load for Hepatitis C.  (ECF Nos. 140-2, at 83; 140-4.)

On June 29, 2007, Plaintiff presented at sick call with complaints of a headache and again inquired about the status of his Hepatitis C and treatment.  Defendant Meyer explained the Hepatitis C treatment and indicated that Plaintiff could have Tylenol or over the counter medications as needed.  Meyer ordered Naproxen.  (ECF Nos. 140-2, at 84; 140-3, at 43.)

Plaintiff was seen by Donegan again on July 10, 2007, to review complaints of vision problems.  Donegan  referred Plaintiff to the Corrections Health Care Administrator and ordered Naproxen for Plaintiff.  (ECF Nos. 140-2, at 84; 140-3, at 42.)

On July 13, 2007, Herbik brought Plaintiff in for an appointment to discuss any medical concerns that Plaintiff may have had.  Herbik noted that Plaintiff was unable to focus on what

medical issues he had and became argumentative. Consequently, the visit was terminated. (ECF No. 140-2, at 81.)

On July 17, 2007, defendant Meyer saw Plaintiff in response to a request for eye drops and complaints of light sensitivity. (ECF No. 140-2, at 82.) Meyer noted that an optometry examination performed in December 2006 was normal. (Id.) On July 27, 2007, Meyer saw Plaintiff in sick call due to complaint of a headache. Meyer ordered Motrin, which was approved by Herbik. (ECF No. 140-2, at 81; 140-3, at 41.) Meyer saw Plaintiff again in sick call on August 31, 2007, to discuss Plaintiff's request for eye drops and pain pills. Meyer again noted there was no medical need for eye drops. (ECF No. 140-2, at 82.)

 On February 25, 2008, Dr. Caramanna noted that Plaintiff failed to keep his medical appointment. (Id. at 79.)

On March 6, 2008, Meyer performed a physical examination on Plaintiff and noted there were no complaints. (Id. at 80.) On March 10, 2008, Meyer saw Plaintiff for a complaint about a headache and ordered Motrin, which was again approved by Herbik. (Id.; ECF No. 140-3, at 37.)

Plaintiff was transferred from SCI Fayette to SCI Dallas on March 25, 2008, and, consequently, has not been seen by any of the Medical Defendants since that time. (See ECF Nos. 140-2, at 80; 140-3, at 36; 140-5.) Plaintiff's medical records subsequent to his transfer, however, confirm much of the Medical Defendants' diagnoses and the propriety of the treatment provided to Plaintiff at SCI Fayette. (See ECF No. 140-2, 140-7, 140-9.)

The record shows that Dr. Bohinski met with Plaintiff at SCI Dallas on April 18, 2008, to review his history. Dr. Bohinski educated Plaintiff about Hepatitis C and noted that Plaintiff

understood. (ECF No. 140-2, at 78.) On the same date, Plaintiff again refused testing to determine his viral load for Hepatitis C. (ECF No. 140-7.)

On July 10, 2008, Plaintiff was seen by P.A. O'Brien complaining about the lack of air in his cell. O'Brien noted no respiratory distress and that Plaintiff displayed manipulative behavior. (ECF No. 140-2, at 72-74.)

On September 4, 2008, P.A. O'Brien noted that Plaintiff complained of shortness of breath and that his lungs were destroyed by an overdose of Interferon he received while previously being treated for Hepatitis C. Plaintiff, however, was not in any respiratory distress and had no shortness of breath while talking. (ECF No. 140-2, at 68.)

Plaintiff refused to have blood work done on April 8, 2009, April 17, 2009, and again on August 11, 2009. (ECF Nos. 140-2, at 63, 66-67; 140-8; 140-9.)

On August 17, 2009, C.R.N.P. Purcell noted that Plaintiff complained of Hepatitis C and had false beliefs about his condition. (ECF No. 140-2, at 63.)

One month later, on September 17, 2009, Plaintiff met with P.A. Bunk and stated that he needed to see Dr. Bohinski about the Hepatitis C clinic and because he has cirrhosis and liver cancer. Bunk noted that Plaintiff is convinced that he has a tumor and needs a transplant because he had blood work done that was a tumor marker. Bunk reported that she attempted to review Plaintiff's Hepatitis C treatment and how it works with Plaintiff, but that he seemed not to understand the information she was conveying to him. (ECF No. 140-2, at 64.)

On October 13, 2009, Plaintiff saw Dr. Golsorkhi complaining that he had cancer, cirrhosis, Hepatitis and anemia. Dr. Golsorkhi reviewed lab results and noted that there was no

evidence of cancer or anemia. Dr. Golsorkhi also noted that Plaintiff had been seen in the Hepatitis C clinic and was to be seen again in April 2010. (ECF No. 140-2, at 61.)

On November 14, 2009, Dr. Bohinski saw Plaintiff about similar complaints and noted that there was no indication that any analgesics were needed. (Id. at 62.)

On November 23, 2009, Plaintiff saw P.A. Bunk complaining of heart pains. Bunk scheduled Plaintiff for an electrocardiogram, which demonstrated no clinical findings. (ECF No. 140-2, at 59.) Bunk noted that there was no medical need for treatment. (Id. at 60.)

On March 1, 2010, Plaintiff was seen by C.R.N.P. DeBoer, stating that "I know I have cancer," and requesting a referral to an outside doctor and a CT scan. DeBoer, with approval by Dr. Bohinski, indicated that there was no medical indication that the requested treatment was needed. (Id. at 58.)

Chest x-rays in March and August 2010 showed that Plaintiff's lungs were clear and that there was no active cardiopulmonary disease. (ECF No. 140-10.)

On June 23, 2010, Plaintiff was seen by Dr. Bohinski who noted that Plaintiff was upset that he had not had a liver transplant. Dr. Bohinski conveyed to Plaintiff his history of refusing lab work and even refusing prior treatment for Hepatitis C. Plaintiff subsequently agreed to have lab work performed. (ECF No. 140-2, at 44.)

Plaintiff saw Dr. Bohinski on July 14, 2010, to review lab reports from the recent lab work. Dr. Bohinski explained to Plaintiff about Hepatitis C and why Plaintiff was excluded from certain treatment. (Id. at 45.)

On August 23, 2010, Plaintiff presented at sick call requesting multiple treatments for lung and liver cancer, including biopsies, transplants and referrals to outside specialists. Plaintiff

14

also wanted to review his labs and chest x-rays.  After reviewing Plaintiff's medical records, P.A. Bunk explained to Plaintiff that he does not have cancer, that he has been told that by multiple providers, and that no treatment was needed at that time.  (Id. at 41.)

The record shows that Plaintiff refused to have blood work done again on February 16, 2011, February 18, 2011, June 27, 2011, August 17, 2011, and January 20, 2012.  (ECF Nos. 140-11; 140-12; 140-14; 140-18.)

Plaintiff was scheduled for a liver biopsy to be performed on August 19, 2011, in order to obtain updated information since more than five years had passed since Plaintiff had been treated.  (ECF No. 140-15.)  Plaintiff was instructed not to shower for 48 hours before the biopsy, but he refused to comply.  (ECF No. 140-13.)  Nevertheless, the results of the biopsy showed "stage 1 grade 1" Hepatitis, thereby indicating that Plaintiff did not reach the standard for treatment.  (ECF No. 140-16; 140-17.)

On October 21, 2011, Plaintiff complained to P.A. Bunk that he had been taken off bottom bunk status which Plaintiff felt he needed because of the damage to his organs.  Bunk explained to Plaintiff that, even if he had been given a higher dosage of Interferon than he should have received, it would not cause the heart disease Plaintiff claims he has.  (ECF No. 140-2, at 9.)

Plaintiff's medical records show that Plaintiff had electrocardiograms in 2008, 2009 and 2011, all of which were normal; that Plaintiff had lab work completed on May 16, 2007, February 15, 2008, June 28, 2010, August 4, 2010, September 15, 2010, February 18, 2011, February 24, 2011, July 8, 2011, August 4, 2011, August 12, 2011, September 1, 2011, and October 13, 2011; and that Plaintiff was seen in the Hepatitis C clinic for evaluation on June 20,

2007; April 18, 2008; February 16, 2009; April 10, 2009; June 23, 2010; August 19, 2010; February 22, 2011; and July 14, 2011.  (ECF Nos. 140-19; 140-20; 140-21.)

In light of this evidence no reasonable jury could find that any of the Medical Defendants were deliberately indifferent to a serious medical need.  Indeed, it appears clear that Plaintiff has never been diagnosed with, and does not suffer from, liver cancer.  In fact, the record shows that Plaintiff's lab work done on August 5, 2010 was negative and that Plaintiff has specifically been told by multiple providers that that he does not have cancer in either his liver or his lungs.  (ECF No. 140-2, at 41.)  Absent a diagnosis of liver cancer, it cannot be said that Plaintiff suffers from a serious medical need in this regard or that there is any basis for treatment.

To the extent that Plaintiff claims he is not being treated for Hepatitis C or cirrhosis of the liver, the record is to the contrary.  Plaintiff acknowledges in the complaint that at least seven different physicians, physician assistants or nurses have participated in his care and treatment, and that, when he chooses to consent, he has received regular blood tests, examinations and office visits, such that his medical records are contained in two volumes.  (ECF No. 10, ¶¶ 5-11.) Plaintiff testified at his deposition that he has been seen by doctors, nurses and physicians' assistants while he has been incarcerated at SCI Fayette, given tests, had his blood tested and given medication and treatment for his liver.  (ECF No. 133-3, at 50, 62-63.)  He testified that he met with defendants Herbik, Ellsworth, Tretinik and Cowden to discuss his cirrhosis.  (Id. at 60-61.)  The record reflects that Plaintiff has been seen at the Hepatitis C clinic on numerous occasions and that his treatment was reviewed with him a number of times by various health care providers.  (ECF Nos. 140-2, at 45, 64, 78, 84, 87; 140-21.)

16

In sum, there is no evidence of record from which a reasonable fact-finder could conclude that any of the Medical Defendants ignored Plaintiff's need for medical treatment or prevented him from receiving needed treatment. To the contrary, as pointed out by the Medical Defendants, the record shows that when Plaintiff complained of a headache, he was seen and provided medication. When he complained of shortness of breath, he was evaluated and sent for testing. He has had x-rays, electrocardiograms, regular lab work, and regular consultations with providers who have tried to educate him about his Hepatitis C. He has been seen and followed in the Hepatitis C clinic, in addition to numerous sick call visits over the years. While Plaintiff may not be receiving the treatment that he wants or believes he needs, the record does not show any deliberate indifference. See Lasko v. Watts, 373 F. App'x 196, 203 (3d Cir. 2010) (because a prisoner does not have the right to choose a specific form of medical treatment, the failure to refer the plaintiff for a transplant or to provide additional medication or treatment resulting from the exercise of medical judgment, whether in error or not, does not provide the basis for finding a constitutional violation); Chimenti v. Kimber, Civil NO. 3:CV-01-0273, 2011 WL 4402514, at *4 (M.D. Pa. 2011); see also Hood v. Prisoner Health Servs,, Inc., 180 F. App'x 21, 25 (10th Cir. 2006) (no constitutional violation where defendant failed to refer prisoner to outside specialist). Because no reasonable jury could render a verdict in favor of Plaintiff on the claims against the Medical Defendants, this motion for summary judgment must be granted.[5]

---

[5] The court notes here that in response to the Medical Defendants' alternative argument that Plaintiff's claims based upon Eighth Amendment violations fail because Plaintiff did not offer any expert testimony to support a finding that any actions, or inaction, on their part caused Plaintiff any actual harm, Plaintiff argues that he was somehow prevented from obtaining an expert or conducting discovery because his appeal from an order dated January 9, 2012, denying him the appointment of counsel was not timely filed by the Clerk of Court. Neither Plaintiff's motion seeking the appointment of counsel nor his appeal from the denial of that motion, however, relieved Plaintiff of the responsibility of, or prevented him from, conducting discovery. Not only does Plaintiff have no constitutional or statutory right to appointed counsel, see Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002), but Plaintiff filed six previous requests for the appointment of counsel which were reviewed by four different judges, including

### B. Motion for Summary Judgment filed by the DOC Defendants

#### 1. Defendant Beard

The DOC Defendants filed a motion for summary judgment in which they initially address the claims brought against defendant Beard.[6] Plaintiff alleged in the complaint that Beard read and approved policies that are "to be followed and applied by his subordinates" in the DOC, and that the policies violate his rights under, *inter alia*, the cruel and unusual punishment clause of the United States Constitution. (ECF No. 10 ¶ 4.) Although not identified in the complaint, Plaintiff testified at his deposition that the policy at issue is that regarding the Inmate Grievance System, DC-ADM 804, which he claims is ineffective. Plaintiff complains that Beard failed to institute a policy that allows inmates to receive organ transplants. (ECF No. 133-3, at 41-42, 43-44.) The DOC Defendants argue that they are entitled to summary judgment on these claims because there is no constitutionally protected right to the prison grievance process and because the DOC does, in fact, have a policy of providing organ transplants when they are medically necessary.

---

the undersigned, and all those requests were denied. (See ECF Nos. 11, 13, 25, 26, 33, 34, 63, 67, 75, 77, 96, 99, 102, 107.) To the extent that Plaintiff claims he was waiting for the undersigned to conduct an investigation into his complaints regarding the clerk of court and the magistrate judge, his request did not serve to extend the time for discovery particularly because Plaintiff did not seek the court's intervention until August 30, 2012, which was almost eleven weeks after discovery had already closed. (See ECF Nos. 130, 143.) It is apparent to the court that Plaintiff was not prejudiced by his purported neglect in seeking the help of an expert as Plaintiff's medical records show that he has received care and treatment for his medical conditions and other complaints. Consequently, any testimony offered by an expert could, at best, suggest only that the Medical Defendants were negligent or that the treatment they provided was inadequate and not that they were deliberately indifferent to a serious and known medical need.

[6] The DOC Defendants also argue that, to the extent Plaintiff brings suit against them in their official capacities, those claims are barred because they are entitled to sovereign immunity under the Eleventh Amendment. These claims, however, were dismissed pursuant to the motions to dismiss previously filed and ruled on by the court. (See ECF Nos. 123, 128.)

As previously discussed, the DOC instituted a three-step grievance and appeals process that must be pursued through all three levels in accordance with the relevant procedural requirements before exhaustion will be found.  Although the DOC provided that policy, it is not constitutionally required to do so and does "'not confer any substantive constitutional right upon prison inmates.'"  Weldon v. Cywinski, Civil No. 1:CV-04-0529, 2006 WL 2261347, at *4 (M.D. Pa. Aug. 7, 2006) (quoting Hoover v. Watson, 886 F. Supp. 410, 418 (D. Del.), aff'd, 74 F.3d 1226 (3d Cir. 1995)).  Because inmates do not have a constitutionally protected right to the prison grievance process in the first instance, the policy's short comings cannot provide the basis for finding a constitutional violation.  Id. (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991); see Rivera v. Pa. Dep't of Corr., 346 F. App'x 749, 751 (3d Cir. 2009).  To the extent Plaintiff seeks to hold Beard liable for the failings of the DC-ADM 804, he may not do so in this § 1983 action.

Defendant Beard is also entitled to judgment in his favor insofar as Plaintiff seeks to hold him liable for failing to institute a policy regarding organ transplants.  (See ECF No. 133-4.) DOC Policy No. 13.02.01, which covers "Access to Health Care," specifically provides that "[t]he Department will provide an organ transplant when medically necessary to sustain life and health on a case-by-case basis."  (Id. at 24.)  While Plaintiff did not receive an organ transplant when he felt he should have, there is a policy in place that shows transplants may be provided in certain circumstances.  (See ECF No. 133-3, at 41-42.)  As a result, this claim is refuted by the record and summary judgment should be granted in favor of the DOC defendants because no reasonable jury could render a verdict in favor of Plaintiff.

## 2.  Eighth Amendment Violations

It is well established that prison staff members who are not medical personnel cannot be considered deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir.1993); see Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) ("[i]f a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands").  Thus, "[a]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official [ ] will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference").  Spruill, 372 F.3d at 236.

Here, none of the DOC Defendants are physicians.  Although Tretinik is a Corrections Health Care Administrator, the DOC Defendants presented evidence that his responsibilities in that position are purely administrative and do not include providing health care to inmates or making decisions regarding an inmate's medical treatment.  (ECF No. 133-8.)  Although Ellsworth is a registered nurse and, according to Plaintiff, has the power to give advice regarding the treatment he received, he was unable to say that she had the power to tell Herbik or any other physician how to treat Plaintiff.  (ECF No. 133-3, at 64-65.)  Because this court already concluded that Plaintiff was, and is, being treated by medical officials for the medical conditions with which he has been diagnosed, the DOC Defendants cannot be held liable for failing to provide him with alternative care.  See Fillebrown v. Zettlemoyer, Civ. A. No. 95-4394, 1996 WL 460051, at *3 (E.D. Pa. Aug. 9, 1996) ("[P]rison administrators and the nursing staff of the prison infirmary cannot be found deliberately indifferent for failing to defer to an inmate's judgment about appropriate diagnostic care when it contradicts the recommendations of the

treating physician.").  As such, no reasonable jury could render a verdict in Plaintiff's favor and the court must grant the DOC Defendants' motion for summary judgment with respect to Plaintiff's Eighth Amendment deliberate indifference claims.[7]


IV.    **CONCLUSION**

For the foregoing reasons, the motion for summary judgment filed by the DOC Defendants (ECF No. 132) will be granted and that the motion for summary judgment filed by the Medical Defendants (ECF No. 137) will be granted as well.

An appropriate order will follow.

/s/ Joy Flowers Conti
JOY FLOWERS CONTI
UNITED STATES DISTRICT JUDGE

Dated: March 19, 2013


cc:    The Honorable Maureen P. Kelly
       United States Magistrate Judge

       Domingo Colon Montanez
       ED-3826
       SCI Dallas
       1000 Follies Road
       Dallas, PA 18612

       All counsel of record by Notice of Electronic Filing

---

[7] Because the court concluded that no reasonable jury could find that any of the Medical Defendants or DOC Defendant were deliberately indifferent to Plaintiff's serious medical needs, the court need not consider whether Plaintiff is entitled to punitive damages.  See Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 873 (E.D. Pa. 2000) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)) ("[P]unitive damages are available against individual state actors, however, upon a showing that their conduct was 'motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'").